UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 14-02491 |
| VERSUS | JUDGE ROBERT G. JAMES |
| GROUPO RIMAR, AKA SUAVINEX, SA | MAG. JUDGE KAREN L. HAYES |

<u>RULING</u>

This is a breach of contract case. Plaintiff Luv n' Care, Ltd. ("LNC") filed suit against Groupo Rimar, Suavinex, SA ("Suavinex") over an alleged breach of the parties' 2012 Termination Agreement and Mutual Release ("2012 Termination Agreement").

Before the Court is Suavinex's "Motion for Partial Summary Judgment" [Doc. No. 64]. For the following reasons, Suavinex's Motion for Partial Summary Judgment is GRANTED.

**I.   FACTS AND PROCEDURAL HISTORY**

LNC is a Louisiana corporation; Suavinex is a Spanish corporation. [Doc. No. 20, p. 1]. Both companies sell and design baby products. In 2009 the parties entered into a distribution agreement whereby Suavinex would have the right to distribute certain products in Mainland Spain and Spain's national territory.[1] [Doc. No. 82-1, p. 3]. The products LNC authorized Suavinex to distribute included the orthodontic pacifier and soft top spout products at issue in this case. [Doc. No. 82-2, p. 11].

---

[1] In its briefing, LNC points out that the history of the parties goes back further than the 2009 Agreement. This is confirmed by Suavinex's admission that LNC sold the disputed products to Suavinex as early as 2001. [Doc. No. 82-2, p. 7]. However, the Court finds much of LNC's recap of the parties' history to be irrelevant as neither the 2009 Agreement nor 2012 Termination Agreement references or incorporates any prior conduct or relationship between the parties.

The 2009 Agreement had a term of three years. [Doc. No. 64, Exh. G, p. 8]. At some point before the agreement terminated, a dispute arose between the parties. In settlement of the dispute, the parties entered into a Termination Agreement on April 12, 2012. The 2012 Termination Agreement served to terminate the 2009 Agreement, subject to the survivability of Paragraphs 15, 16, and 19. [Doc. No. 64, Exh. H, p. 2]. Surviving Paragraphs 15, specifically 15B, and 19 of the 2009 Agreement are at issue in this case.

Paragraph 15B concerns "Intellectual Property Rights and LNC's Product Design and Packaging." In that provision, Suavinex agrees "**not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures and methods [and] any other proprietary designs or information without LNC's written permission**." [Doc. No. 64, Exh. G, p. 8 (emphasis added)].

Paragraph 19 concerns "Use of Confidential Information" and provides:

> **During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, business plans, prototypes, procedures and methods [and] any other proprietary designs or information of the other party without the written consent of the other party. Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. During the term of this Agreement and continuing after the expiration or termination hereof, Distributor agrees not to use in any fashion said information or designs, or any colorable imitations thereof...**[2]

[Doc. No. 64, Exh. G, p. 10 (emphasis added)].

LNC asserts that, in 2013, it learned that Suavinex had been selling child and baby products

---

[2] In their pleadings and briefings, both parties, when providing the contract terms, insert an [and] into the disputed paragraphs so that they read: "procedures and methods [and] any other proprietary designs or information." *See* [Doc. No. 20, p. 3-4]; [Doc. No. 64-1, p. 9].

that closely resembled its own, in violation of Paragraphs 15 and 19. [Doc. No. 20, p. 4].

On June 6, 2013, alleging Suavinex's sale of these products violated Paragraphs 15 and 19 of the 2009 Agreement, LNC filed a petition for breach of contract in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. ("Fourth Judicial District Court") [Doc. No. 64, Exh. L]. However, that suit was voluntarily dismissed because the 2012 Termination mandated any suit related to its terms be brought in the United States District Court for the Western District of Louisiana.

On June 14, 2014, LNC filed a Complaint against Suavinex in this Court. [Doc. No. 1]. An Amended Complaint was filed on December 8, 2014. [Doc. No. 20]. The Amended Complaint alleged that certain Suavinex products so closely resembled the silicone soft top spout products and orthodontic pacifier as to violate the terms of paragraphs 15 and 19 of the 2009 Distribution Agreement. *Id* at 4.[3] Suavinex filed an Answer denying a breach of the 2009 Agreement or 2012 Termination Agreement. [Doc. No. 26]. In its Answer, Suavinex brought a Counterclaim for Breach of Contract, alleging LNC had violated the terms of the 2012 Termination Agreement by initially bringing suit in the Fourth Judicial District Court, and a Counterclaim for a Declaratory Judgment that it had not breached the terms of the 2009 Agreement or 2012 Termination Agreement. [Doc. No. 26, p. 14-15].

Suavinex filed a Motion for Partial Summary Judgment on July 6, 2015, seeking summary judgment on the following: (1) Suavinex's Counterclaim for Declaratory Judgment that Suavinex did not breach the parties' 2009 Agreement or 2012 Termination Agreement and Mutual Release,

---

[3] There was also an allegation based on the Louisiana Unfair Trade Practices and Consumer Protection Law, LA. Rev. Stat. 51: 1407, *et seq.*, but this claim was subsequently dismissed. [Doc. No. 60].

as alleged in LNC's Amended Complaint; (2) that LNC had not been irreparably harmed and therefore was not entitled to a permanent injunction prohibiting Suavinex's sales outside of the United States of the orthodontic pacifier and silicone soft top spout products at issue in this action; and (3) Suavinex's Counterclaim for Breach of Contract that LNC breached the 2012 Termination Agreement by willfully filing a breach of contract action in state court, knowing that the 2012 Termination Agreement mandated such action be brought only in the United States District Court for the Western District of Louisiana. [Doc. No. 64, p. 1]. On August 3, 2015, LNC filed an opposition memorandum. [Doc. No. 77]. On August 27, 2015, Suavinex filed a reply. [Doc. No. 82]. On September 3, 2015, LNC filed a sur-reply. [Doc. No. 87].

**II.    LAW AND ANALYSIS**

    **A.    Legal Standards**

        ***1.    Summary Judgment***

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Thus, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

With respect to Suavinex's Counterclaim that LNC breached the parties' 2012 Termination Agreement, Suavinex bears the burden of proof, and, therefore, must support its motion with "credible evidence...that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Suavinex, as the moving party must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1192 (5th Cir. 1986).

However, with respect to LNC's claims that Suavinex breached the parties' Agreements and LNC's request for a permanent injunction, LNC bears the burden of proof. Accordingly, Suavinex need not negate all the essential elements of LNC's claim. Suavinex's burden is to demonstrate an absence of factual support for one or more of those elements. *See Celotex Corp.*, 477 U.S. at 322-323.

    **2.**    ***Interpretation of Contracts***

To prove a breach of contract under Louisiana law, a party must show that: (1) the obligor

had an obligation to perform; (2) the obligor failed to perform; and (3) the obligee sustained injury as a result of the obligor's failure to perform. *Favrot v. Favrot*, No. 1108-09 (La. App. 4 Cir. 2011), 68 So. 3d 1099, 1109. Interpretation of the contract will often be necessary to determine whether there has been a breach.

The goal of contract interpretation is to discover the common intent of the parties. LA. CIV. CODE art. 2045. The contract language is the starting point for determining that common intent. *Six Flags, Inc. v.Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009). "The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE art. 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. LA. CIV. CODE art. 2048. Extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. *Amoco Production Co. v. Fina Oil & Chemical Co.,* No. 95-1185 (La. App. 1 Cir. 2/23/1996); 670 So.2d 502, 511.

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Caddo Gas Gathering L.L.C. v. Regency Intrastate LLC*, 44-851 (La. App. 2 Cir. 11/12/2009); 26 So.3d 233, 235. However, if a court determines as a matter of law that a contract is ambiguous, then discerning the parties' intent becomes, in part, a question of fact, and summary judgment will rarely be appropriate. *See Carter v. BRMAP*, 90-1153 (La. App. 1 Cir. 11/22/1991); 591 So.2d 1184, 1188.

    B.    **LNC's Breach of Contract Claim**

In its Amended Complaint, LNC alleged that Suavinex breached surviving paragraphs 15, specifically 15B, and 19 of the 2009 Agreement by selling child and baby products that "closely

resembled" LNC products. Paragraph 15B provides:

15. Intellectual Property Rights and LNC's Product Design and Packaging

   B. Distributor hereby acknowledges and agrees not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures and methods [and] any other proprietary designs or information without LNC's written permission.

Paragraph 19 of the 2009 Agreement provides, in pertinent part:

19. Use of Confidential Information

   During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, drawings, business plans, prototypes, procedures and methods [and] any other proprietary designs or information of the other party without the written consent of the other party. Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. During the term of this Agreement and continuing after the expiration or termination hereof, Distributor agrees not to use in any fashion said information or designs, or any colorable imitation thereof...

The plain language of the contract is the starting point. Suavinex argues that the disputed paragraphs are unambiguous and protect only LNC's proprietary information. Because the LNC products Suavinex allegedly copied were within the public arena at the time the parties entered the 2009 Distribution Agreement and not proprietary as that term is generally defined, they have not breached Paragraphs 15B and 19.[4]

LNC contends that the disputed provisions were meant to provide patent-like protection in areas of the world where the company cannot afford to procure patents. By LNC's interpretation,

---

[4] There is no dispute that the products at issue in this case were publicly available prior to the execution of the 2009 Distribution Agreement. LNC only contends that the products were confidential before being sold to the public. However, even if true, this assertion is irrelevant.

making and then selling any products resembling or possessing similar features as one of its own breaches the provisions. Indeed, LNC contends that Suavinex was aware of its interpretation of the contract. [Doc. No. 77, p. 4].

Bed-rock principles of contract interpretation command that the words of a contract must be given their generally prevailing meaning. LA. CIV. CODE art. 2047. Proprietary information is "information in which the owner has a protectable interest." Black's Law Dictionary (9th ed. 2009). Any protectable information is usually lost when that information is offered to the public. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 149 (1989) (noting that, as a general rule, "[o]nce an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his work to the public at large."). Courts have continually emphasized the lack of protection for publicly-available products: "unless protected by copyright or patent, once [a] form [or] design in an article is offered to the public, it becomes the property of the public and, absent deceptive identification about source, may be copied at will." *Zippo Mfg. v. Manners Jewelers, Inc.,* 180 F. Supp. 845, 847 (E.D. La. 1960); *see also Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354 (5th Cir. 2002) (stating that "[u]nless protected by patent or copyright, functional product features may be copied freely by competitors in the marketplace.").

In this case, Paragraph 15B applies to the copying or utilization of an enumerated list of items commonly understood to be proprietary, as well as the catch-all: " any *other proprietary designs or information.*" Paragraph 19 contains the same enumerated list and catch-all, but applies to the disclosure of confidential and non-confidential proprietary information.

Thus, the actual terms of this contract are unambiguous and apply to proprietary information,

not publicly-available information as LNC contends. Because the products at issue in this matter were publicly available before the parties entered the 2009 Agreement, Suavinex has not breached the express terms of the 2012 Termination Agreement. Moreover, LNC's intent, or even any alleged mutual understanding as to the contract's meaning, is of no moment in this case because the contract itself is clear, and extrinsic evidence is inadmissible. *See Amoco Production Co.*, 670 So.2d at 511.

Further, LNC's proposed interpretation would violate Louisiana contract principles. Several courts applying Louisiana law have held that only information that is confidential to at least one of the parties may be protected through contract. *See Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 625 (W.D. La. 2010) (dealing with non-compete agreement and Employee Intellectual Property and Confidentiality Agreement providing the employee "shall not disclose to anyone...any item of Intellectual Property which is confidential or proprietary to JCI..."); *NCH Corp. v. Broyles*, 749 F.2d 247, 253 (5th Cir. 1985) (dealing with covenants not to compete, solicit customers, and not to use or disclose confidential information). Although the cited cases deal with employment contracts, their logic would seemingly apply across the board.

LNC's citation to contrary authority is not persuasive. First, LNC cites to a Federal Circuit case, *Universal Gym, Inc. v. ERWA Exercise Equipment Ltd.*, 827 F.2d 1542 (Fed. Cir. 1987). In that case, ERWA and Universal Gym entered an agreement under which ERWA could manufacture, market, and sell Universal exercise machines in Canada under Universal trademarks in return for paying royalties to Universal. *Id.* at 1545. The agreement also contained a paragraph providing that, after the termination of the agreement, ERWA could not "manufacture, use, sell, or distribute any products which include any of the features, designs, technical information or said know-how of licensor..." *Id.*

9

The United States Court of Appeals for the Federal Circuit applied the plain language of the agreement and affirmed the district court's refusal to limit protection to confidential or proprietary information. *Id.* at 1551. The district court had reasoned that the contract meant what it said; it was not limited to proprietary or confidential information and did not violate public policy. *See Universal Gym Equipment, Inc. v. Atlantic Health & Fitness Products*, No. B-80-446, 1985 WL 72675 at *17 (D. Md. Oct. 24, 1985).

However, the *Universal Gym* Court was not applying Louisiana law, which prohibits the protection of such information. Moreover, the language of the agreement in *Universal Gym* does not have the same limitation to proprietary information contained in the agreement herein.

LNC also contends that the Fourth Judicial District Court has construed an identical agreement, finding it enforceable and applicable to publicly-available information. [Doc. No. 77, p. 20]. In *Luv n' Care, Ltd. v. Jackel International Limited*, 4th Judicial District Court Docket No. 10-1891, LNC alleged that Jackel had breached a distribution agreement by selling products that closely resembled those of LNC. The contractual provisions allegedly breached by Jackel were, in large part, identical to the provisions at issue in this case. Jackel filed a Motion for Summary Judgment arguing that it had not breached the provisions. The Fourth Judicial District Court denied Jackel's Motion for Summary Judgment in a ruling without reasons, allowing the case to go to the jury.

It is well established that this Court is not bound by the decisions of state trial courts. *See Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 273 (5th Cir. 1991). Further, in that case, LNC alleged Jackel had breached a contractual provision not at issue here. That provision may have influenced the Fourth Judicial District Court's denial of summary judgment. Without reasons, the decision offers no guidance and, thus, is not persuasive.

Paragraphs 15(B) and 19, by their plain terms, do not prohibit use of non-proprietary information such as the publicly-available LNC product designs alleged to have been copied. Moreover, LNC's proposed interpretation is untenable because Louisiana contract law only allows for the protection of confidential information when the information is actually confidential to one of the parties. Therefore, Suavinex's Motion for Partial Summary Judgment with respect to its Counterclaim for Declaratory Judgment that it did not breach the parties' 2012 Termination Agreement is GRANTED. [5]

### C. LNC's Request for Permanent Injunction

This Court has found that Suavinex did not breach the parties' 2012 Termination Agreement. Therefore, Suavinex's motion for summary judgment that LNC is not entitled to a permanent injunction is also GRANTED.

### D. Suavinex's Breach of the 2012 Termination Agreement Claim

Suavinex also moves for summary judgment on its Counterclaim alleging LNC breached the terms of the 2012 Termination Agreement by filing a lawsuit for breach of that Agreement in a court other than the Western District of Louisiana. [Doc. No. 64, p. 1]. Section 5.9 of the 2012 Termination Agreement provides, in pertinent part, that:

> Any action, hearing, suit or proceeding arising out of or relating to this Agreement shall be brought in the United States District Court for the Western District of Louisiana...The prevailing party in a claim in a court of competent jurisdiction arising under this Agreement against another Party shall be entitled to collect reasonable attorney's fees incurred in connection with the claim or suit or the underlying matter. For purposes of this Section, a Party shall be considered the prevailing party if a court of competent jurisdiction has reached a decision which is substantially closer to one Party's original claims or defenses, taken as a whole, than the opposing Party;

---

[5] Given this conclusion, the Court need not reach Suavinex's alternative argument that LNC released any claims under the 2012 Termination Agreement.

> provided that if the decision is not clearly substantially closer to one party's original claims or defenses, taken as a whole, than the opposing Party, none of the Parties shall be entitled to collect attorney's fees.

[Doc. No. 64, Exh. H, p. 5]. On June 6, 2013, LNC filed a breach of contract action against Suavinex in the Fourth Judicial District Court, alleging that Suavinex breached provisions 15B and 19 of the 2009 Distribution Agreement. [Doc. No. 64 Exh. L]. Because of that filing and subsequent dismissal, Suavinex alleges it suffered damages, including its own time and efforts, as well as the costs of counsel in defending against the improperly filed state court lawsuit. [Doc. No. 64-1, p. 22]. Suavinex argues that these facts and allegations warrant summary judgment on this issue.

Conversely, LNC argues that three reasons preclude granting the motion. LNC first asserts that Suavinex is only entitled to attorneys' fees if it is the prevailing party as defined in the 2012 Termination Agreement. [Doc. No. 77, p. 6]. According to LNC, because the contract requires the claims and defenses to "be taken as a whole" in order to determine the prevailing party, granting a motion for summary judgment on the issue is premature because there are multiple claims at issue in this case. *Id.* at 7. A prevailing party may only get attorneys' fees after resolving all of the claims at issue. *Id.* Second, LNC claims that Suavinex has provided no evidence that the attorneys' fees it seeks are reasonable. *Id.* Third, LNC argues that its filing in state court did not violate the 2012 Termination Agreement because the cause of action was not based upon a violation of the 2012 Termination Agreement, but rather the 2009 Agreement. [Doc. No. 87, p. 4].

The Court finds that LNC has breached the clear provision of the 2012 Termination Agreement mandating that any lawsuit "arising out of or relating" to it must be filed in this Court (the Western District of Louisiana) because LNC's suit was, at the very least, related to the 2012 Termination Agreement. [Doc. No. 64, Exh. H, p. 5]. Contrary to LNC's argument, Suavinex is not

attempting to obtain attorneys' fees as a "prevailing party," but as damages for LNC's breach. There is no requirement that one must be a prevailing party in order to recover damages; the provision merely states that a certain remedy–reasonable attorneys' fees–is available for a prevailing party as defined in the agreement. There is no indication that this was meant to be an exclusive remedy, or that damages for the contract's breach could only be obtained after an adjudication of all claims.

Further, LNC's argument that it cannot be liable under the 2012 Termination Agreement because its state suit was mistakenly based on the 2009 Agreement fails to persuade. By the time LNC filed its state suit in 2013, any suit based on Paragraphs 15, 16, and 19 of the 2009 Agreement was required to be brought in the United States District Court for the Western District of Louisiana. Because LNC brought suit in the Fourth Judicial District Court, it violated the express terms of the contract.

However, in order to prove breach of contract under Louisiana law, the claimant must show injury or damage as a result of the obligee's failure to perform. *See Favrot*, 68 So. 3d 1099, at 1109. Here, the Court finds that Suavinex has proven breach of contract by demonstrating at least some injury, but has not introduced sufficient proof to allow the Court to determine the amount of damages to which it is entitled.

Suavinex asks for "at least the amount of the Banner & Witcoff invoices paid for services defending against the improper state court action through the dismissal of the state court action on September 3, 2014." [Doc. No. 82, p. 3]. In support of this request, Suavinex provides an exhibit containing the Banner & Witcoff Statement of Account, but the Statement of Account is cursory at best. It contains only four invoice dates, four invoice numbers, amounts billed, and balance due. [Doc. No. 64, Exh. P]. There is no description of what the Banner & Witcoff attorneys actually did.

Indeed, there is no way to know from the Statement of Account that the money owed is actually related to the instant case. Further, there is some dispute as to whether Suavinex failed to mitigate its damages by not negotiating with LNC's counsel at an earlier date concerning a voluntary dismissal of the state court action.

If Suavinex wishes to pursue its claim for damages in the amount sought, it must provide the Court with admissible and appropriate evidence demonstrating when the Banner & Witcoff attorneys were retained, what they did with respect to the improperly filed state court suit, their hourly rates, and the number of hours they worked on Suavinex's declinatory exception for improper venue. LNC will then be given a period of time to contest Suavinex's evidence relating to the amount of damages.

Accordingly, Suavinex's Motion for Summary Judgment on this Counterclaim is GRANTED, but no damages are awarded at this time. Suavinex shall have until Wednesday, October 14, 2015, to file a supplemental memorandum in support of its request for damages with the evidence detailed above. LNC shall have until Wednesday, October 28, 2015, to file a memorandum in opposition to Suavinex's request for damages along with any appropriate and admissible evidence.

### III. CONCLUSION

For the foregoing reasons, Suavinex's Motion for Partial Summary Judgment is GRANTED. The Court finds that Suavinex has not breached the 2012 Termination Agreement and that LNC is not entitled to a permanent injunction. The Court further finds that LNC breached the 2012 Termination Agreement by filing suit in the Fourth Judicial District Court. However, no damages are awarded at this time. Suavinex shall have until Thursday, October 15, 2015, to file a supplemental memorandum with admissible and appropriate evidence demonstrating when the Banner & Witcoff attorneys were retained, what they did with respect to the improperly filed state

court suit, their hourly rates, and the number of hours they worked on Suavinex's declinatory exception for improper venue. LNC will then have until Thursday, October 29, 2015, to file a supplemental memorandum with admissible and appropriate evidence in opposition to Suavinex's request for damages.

    MONROE, LOUISIANA, this 30th day of September, 2015.

                                                  ROBERT G. JAMES
                                                  UNITED STATES DISTRICT JUDGE