# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD | CIVIL ACTION NO. 14-2491 |
| VERSUS | JUDGE ROBERT G. JAMES |
| GROUPO RIMAR, AKA SUAVINEX | MAG. JUDGE KAREN L. HAYES |

## RULING

This Ruling addresses two issues: (1) whether Groupo Rimar, aka Suavinex ("Suavinex") may recover the attorneys' fees it expended as a result of Luv N'Care, LLC's ("LNC") breach of the forum selection clause of the 2012 Termination Agreement and Mutual Release ("2012 Termination Agreement") [Doc. No. 132]; and (2) whether Suavinex can recover attorneys' fees and costs of this action as set forth in its "Motion and Supporting Memorandum for Attorneys' Fees and Costs and Expenses" ("Motion for Attorneys' Fees and Costs") [Doc. No. 131].

For the following reasons, Suavinex is precluded from recovery of any attorneys' fees expended to defend the improperly-filed state court action. However, the Court will award nominal damages for Suavinex's lost time as a result of LNC's breach. Further, Suavinex's Motion for Attorneys' Fees and Costs is GRANTED IN PART and DENIED IN PART.

## I.    FACTS AND PROCEDURAL HISTORY

This Court has previously recounted the facts of this case in its September 30, 2015 Ruling [Doc. No. 127] and hereby incorporates that recitation of facts by reference.

In its September 30, 2015 Ruling this Court granted Suavinex's Motion for Partial Summary

Judgment. [Doc. No. 127, 128]. The Court found that Suavinex did not breach the 2012 Termination Agreement between the parties, but that LNC did breach the 2012 Termination Agreement by filing suit in the Fourth Judicial District Court in violation of the forum selection clause.

However, the Court did not award damages, finding Suavinex's proof on that matter to be deficient. Suavinex asked for "at least the amount of the Banner & Witcoff invoices paid for services defending against the improper state court action through the dismissal of the state court action on September 3, 2014." [Doc. No. 82, p. 3]. The Court found Suavinex's proof to be too cursory and asked the parties for supplemental briefing on an appropriate damages award.

On October 14, 2015, Suavinex filed a supplemental memorandum in support of its damages claim, claiming $99,066 in attorneys' fees as actual damages for LNC's breach of the 2012 Agreement's forum selection clause. [Doc. No. 132]. LNC  filed a supplemental memorandum in opposition. [Doc. No. 140]. Suavinex filed a Reply, and LNC filed a Sur-Reply. [Doc. Nos. 145, 150].

On October 14, 2015, Suavinex also filed a motion for costs pursuant to Rule 54(d) and attorneys' fees pursuant to Paragraph 5.9 of the 2012 Termination Agreement. [Doc. No. 131].[1] LNC filed a memorandum in opposition to this motion. [Doc. No. 148]. Suavinex filed a Reply; LNC filed a Sur-Reply. [Doc. Nos. 153, 156].

## II.    LAW AND ANALYSIS

### A.    Attorneys' Fees as Actual Damages for LNC's Breach of the Forum Selection Clause

Although this Court held that LNC breached the 2012 Termination Agreement's forum selection

---

[1]The Court notes that the attorneys' fees sought in this motion are not those Suavinex claims it incurred as a result of the short-lived state court litigation; rather, these attorneys' fees are only those Suavinex incurred while litigating in this Court.

clause, the Court was unable to assess Suavinex's resultant damages and ordered supplemental briefing on the issue. In compliance with the Court's request, Suavinex submitted detailed evidence of the attorneys' fees it incurred while defending against the improperly-filed suit.

### 1. The American Rule and Attorneys' Fees for Breach of the Forum Selection Clause

Louisiana law governs this dispute in accordance with the 2012 Termination Agreement's plain language. In its memorandum in opposition, LNC argues for the first time that Louisiana follows the American Rule which precludes an award of attorneys' fees as damages for breach of the forum selection clause. The American Rule directs a court to refrain from awarding attorneys' fees absent express contractual or statutory authorization. According to LNC, the Louisiana legislature has not enacted a statute allowing for attorneys' fees in this case, nor does the 2012 Termination Agreement allow them as a matter of contract. Suavinex counters that it seeks attorneys' fees, not as a penalty, but as actual damages resulting from LNC's breach of the 2012 Termination Agreement's forum selection clause. The Court did not address this issue in its September 30, 2015 Ruling, as neither party briefed it.

Courts from other jurisdictions, applying contract law identical to that of Louisiana, have held that attorneys' fees **are not** an appropriate form of actual damages for breach of a forum selection clause–at least when the state follows the American Rule. *See, e.g., Brown Rudnick, LLP v. Surgical Orthomedics, Inc.,* 13-4348, 2014 WL 3439620 at *14 (S.D.N.Y. July 15, 2014); *Versatile Housewares & Gardening Sys., Inc. v. Thrill Logistics, Inc.*, 819 F.Supp.2d 230, 246 (S.D.N.Y 2013); *Tri-County Towing & Recovery v. BellSouth Advertising & Publishing Corp.*, 10-517, 2011 WL 1497384 at *5 (N.D. Ga. Apr. 19, 2011); *Fednav Intern. Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 840 (7th Cir.

2010).

However, other courts have held that attorneys' fees **are** available as actual damages for breach of a forum selection clause. *See Molnar v. 1-800-Flowers.com, Inc.*, 08-0542, 2008 WL 4772125 at *5 (C.D. Cal. Sept. 29, 2008). For example, federal courts applying New York law have reached different conclusions on the issue, as have courts applying Illinois law. (Compare *Versatile Housewares*, 819 F.Supp.2d at 246 with *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F.Supp. 278, 281 (S.D.N.Y. 1998) and *Fednav*, 624 F.3d at 834 with *Lab. Corp. of America v. Upstate Testing Lab., Ltd.*, 967 F.Supp.2d 295, 299 (N.D. Il. 1997). A number of state courts have also held that attorneys' fees are available as actual damages for the breach of a forum selection clause. *See Masiongale Elec.-Mech. Inc. v. Constr. One, Inc.*, 102 Ohio St.3d 1, 2002-Ohio-1861, 806 N.E.2d 148, 150; *El Paso Natural Gas v. Transamerican Natural Gas Corp.*, 669 A.2d 36, 40 (Del. 1995).

Having reviewed and compared the cases, the Court finds that a Louisiana court would follow LNC's cited cases. First, they are more recent: Suavinex cites only one case decided in the past fifteen years. Second, LNC's cases examine the issue in greater depth. Many of the cases Suavinex cites simply assume that attorneys' fees are available as actual damages when a party breaches a forum selection clause. *See Versatile Housewares*, 819 F.Supp.2d at 243 (noting the scant discussion in many older cases awarding attorneys' fees as actual damages for breach of a forum selection clause). Finally, Louisiana has expressed a strong intent to limit the award of attorneys' fees to those provided by statute or contract. Consequently, unless a contractual provision or statute says otherwise, the American Rule bars Suavinex from recovering attorneys' fees resulting from LNC's breach of the forum selection clause.

There is no statute or contractual provision that would allow Suavinex to recover attorneys' fees

4

for LNC's breach of the forum selection clause in this case. The 2012 Termination Agreement allows a court to award attorneys' fees when a court of competent jurisdiction "has reached a decision which is substantially closer to one Party's original claims or defenses, taken as a whole, than the opposing Party's." [Doc. No. 64-8, p. 6]. The Fourth Judicial District Court is not "a court of competent jurisdiction." Moreover, the Fourth Judicial District Court did not render a decision on either party's claims or defenses.

Finally, neither party points to a Louisiana statute allowing attorneys' fees for the breach of a forum selection clause. Accordingly, Suavinex is precluded from obtaining attorneys' fees resulting from LNC's breach of the 2012 Agreement's forum selection clause.

### 2.    *Nominal Damages*

However, the American Rule does not prevent Suavinex from recovering damages other than attorneys' fees. Suavinex also claims that it lost time and effort by having to deal with the improperly-filed suit. Louisiana courts allow for nominal damages in situations where some damage has been incurred, but there is no proof of the actual amount of damages. *See Standard Plumbing Supply Co. v. U.S. Steel Corp.*, 530 703 F.2d 802, 804 (5th Cir. 1983); *see also Fidelity Bank and Trust Co. v. Hammons*, 87-1832 (La. App. 1 Cir. 2/28/1989); 540 So.2d 461, 463 ("[I]n the absence of proof of actual damages, the court may make an award of nominal damages"). Therefore, the Court will award nominal damages for LNC's breach of the forum selection clause.

Nominal damages are usually minuscule in value, but Louisiana does not limit them to a specific or fixed amount. Caselaw gives further guidance on the issue. In *Standard Plumbing*, for example, the Fifth Circuit reversed a district court's award of $50,000 "actual" but unproven damages for breach of contract and remanded for an award of nominal damages not to exceed $1,000. 703 F.2d at 805. In

*Fiesta Foods, Inc. v. Ogden*, 159 So.2d 577, 555 (La. App. 1 Cir. 1963),  a Louisiana court considered $500 to be an appropriate award of nominal damages in a breach of contract action.  In *Tacquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1491 (5th Cir. 1990), the Fifth Circuit found a district court exceeded the bounds of discretion when it awarded $10,000 in nominal damages and lowered the amount to $2,000.

Based on this precedent, the Court will award Suavinex $500 as nominal damages for LNC's breach of the forum selection clause.

### B.   Costs Under Federal Rule of Civil Procedure 54(d)

Suavinex also moves for an award of costs pursuant to Federal Rule of Civil Procedure 54(d), which allows a prevailing party to recover certain costs resulting from federal court litigation:

> Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days notice. On motion served within the next 7 days, the court may review the clerk's action.

Section 1920, Title 28, United States Code defines the term "costs" as used in Rule 54(d) and enumerates taxable expenses. *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004).  Section 1920 provides:

> A judge or clerk of any court in the United States may tax as costs the following:
>
> (1)   Fees of the clerk and marshal;
>
> (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3)   Fees and disbursements for printing and witnesses;
>
> (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1923 of this title....

"Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Usually, a successful litigant is also the prevailing party for purposes of Rule 54(d). *See Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985). Although broad, a district court's ability to award costs pursuant to Rule 54(d) is not unfettered. The costs must be allowable under § 1920; the costs must be supported by proper documentation; and the costs must be reasonable.

Suavinex is the prevailing party in this lawsuit for purposes of Rule 54(d). First, Suavinex prevailed on LNC's claim against it. Second, Fifth Circuit precedent holds a party that receives even nominal damages from a breach of contract claim is a prevailing party under Rule 54(d). *Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 998 (5th Cir. 1976) ("In our view, the award of nominal damages marks the plaintiff, 370, as the prevailing party within the meaning of Rule 54(d)..."). Accordingly, Suavinex may recover appropriate costs pursuant to Rule 54(d).

### 1.     *Stamping Trial Exhibit Numbers*

Suavinex seeks $370.13 for the cost of stamping numbers on its trial exhibits. Under § 1920, a prevailing party may recover as costs "[f]ees for exemplification and costs of making copies of any materials necessarily obtained for use in the case."

Suavinex's pretrial exhibit list reveals 178 exhibits. With this large a list, numbering the exhibits was necessary to ensure orderly presentation during trial. Further, this Court's rules require exhibits to be numbered. Thus, to the extent Suavinex seeks recovery of the $370.13 it expended to stamp trial

exhibits, its motion is GRANTED.

### 2.    Blowback Printing and Related Charges

Suavinex originally sought $955.07 for "Blowback Printing–color (8.5x11)" printing costs for 899 pages printed in color. However, in response to LNC's opposition, Suavinex agreed that printing costs should be reduced to $0.25 per page–a reduction of $449.50.

Again, § 1920 allows a prevailing party to recover "[f]ees for exemplification and the costs of making copies of any material where the copies are necessarily obtained for use in the case." The Fifth Circuit also looks to whether the prevailing party includes an itemized breakdown of the copying costs in the documentation supporting the request for costs. *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991).

In the instant case, Suavinex has failed to include an itemized breakdown of its purported copying costs. Suavinex merely offers its counsels' declaration "that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed." [Doc. No. 131-1, Bill of Costs]. This assurance does not amount to the kind of itemized breakdown the Fifth Circuit requires before awarding printing costs. Therefore, to the extent Suavinex seeks recovery of "Blowback Printing" and related charges, its motion is DENIED.

### 3.    Translations of Trial Exhibits and Depositions

Suavinex seeks $4,145.12 for (1) translating trial exhibits from Spanish to English, and (2) translating oral Spanish deposition testimony into written English.

Section 1920 allows a prevailing party to tax the "compensation of interpreters." However, as LNC argues and the United States Supreme Court has squarely held, "compensation of interpreters"

does not encompass document translation. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2003 (2012).

However, Suavinex argues that it should still recover the exhibit translation as a kind of exemplification under § 1920(4). Suavinex cites no case in support of this argument. Moreover, in the Bill of Costs it filed with the Court, Suavinex listed this amount under "compensation of interpreters," not exemplification. Therefore, to the extent that Suavinex seeks recovery of the $2,648.87 it expended to translate exhibits from Spanish to English, the motion is DENIED.

Suavinex also argues that *Taniguchi* does not bar its claim for the costs of translating oral deposition testimony into its written English counterpart. According to Suavinex, *Taniguchi* only prohibits costs associated with translating written documents and does not bar costs associated with converting spoken Spanish into written English.

That argument must fail. *Taniguchi* held that the "compensation of interpreters" is limited to those translating "orally from one language to another." *Taniguchi*, 132 S.Ct at 2007. Suavinex's translation cannot be described as an oral-to-oral translation. It was an oral-to-written translation, and, therefore, beyond the reach of Rule 54(d). Moreover, because "taxable costs are limited by statute and are modest in scope," the Court resists an expansive interpretation of the word "interpreters" and, instead, gives a conservative interpretation. *Id.* at 2006. Thus, to the extent Suavinex seeks recovery of $1,496.25 it expended to translate Spanish deposition testimony into English, the motion is DENIED.

### 4. *Costs of Deposition Transcripts, Video Recordings of Depositions, and Deposition Exhibits*

Suavinex seeks $13,764.77 in costs for deposition transcripts and video recordings of depositions. LNC argues that the deposition transcripts and video recordings of the depositions were

not necessarily obtained for use in the case.

Section 1920 allows a prevailing party to recover "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." "[P]revailing parties are entitled to recover the costs of original depositions and copies" under § 1920 "provided they were 'necessarily obtained for use in the case.'" *Fogleman*, 920 F.2d at 285.

LNC argues that Suavinex has failed to produce evidence that it obtained the deposition transcripts and video recordings out of necessity. In opposition, Suavinex notes that it needed the deposition transcripts to prepare for trial as well as to prepare motions.

To the extent Suavinex seeks to recover the costs of the deposition transcripts, its motion is GRANTED. Suavinex relied on the deposition transcripts in drafting its Motion for Partial Summary Judgment which this Court granted. However, to the extent Suavinex seeks video recording costs, its motion is DENIED. Other courts within this Circuit have refused to award costs for both deposition transcripts and video recordings when the video recordings were not actually used at trial. *See Stoffels v. SBC Communications, Inc.*, 05-0233, 2012 WL 2122191 at *2 (W.D. Tex. June 11, 2012) ("The Court notes that SBC Communications seeks recovery for the costs of the transcripts as well as the video recordings of these depositions. The Court does not generally award costs for both."). Suavinex has failed to separate its deposition costs from its video recording costs. Therefore, Suavinex will be required to supplement its motion with evidence showing the exact costs of the deposition transcripts.

Suavinex also seeks $681.50 for deposition exhibit costs. LNC argues that these costs were not necessary to the litigation, and, therefore, are unrecoverable. In support of that contention, LNC cites *Ashkenazi v. South Broward Hosp. Dist.*, 11-61403, 2014 WL 3673308 at *2 (S.D. Fla. July 23, 2014). In that case, a federal district court in Florida held that, unless proven to be borne of necessity rather

than counsels' convenience, deposition exhibit costs are not recoverable. In response, Suavinex contends that the exhibits were necessary because both parties listed the deposition exhibits as trial exhibits.

The Court agrees with Suavinex and finds that the deposition exhibits were necessary. These exhibits were from the depositions of Suavinex's design expert Mr. Visser, LNC's design expert witness Mr. Manzo, and Suavinex's damages expert Mr. Troxel. Had this case made it past the summary judgment stage, expert testimony on product design might well have been crucial to determine whether Suavinex breached the 2012 Termination Agreement. What is more, each party included these deposition exhibits on its trial exhibit list, bolstering a finding that the exhibits were necessarily obtained for use in this case. To the extent Suavinex seeks to recover deposition exhibit costs, its motion is GRANTED.

In sum, to the extent Suavinex seeks to recover costs for stamping trial exhibits, deposition transcripts, and deposition exhibits, its motion is GRANTED; the motion is otherwise DENIED. Further, Suavinex must supplement its request with evidence showing the exact cost of the deposition transcripts.

**C.    Reasonable Attorneys' Fees under the 2012 Agreements' Express Terms**

Suavinex also seeks reasonable attorneys' fees in the amount of $825,884.50 as the "prevailing party" under the 2012 Termination Agreement. The 2012 Termination Agreement provides:

> The prevailing party in a claim in a court of competent jurisdiction arising under this agreement against another Party shall be entitled to collect reasonable attorney's fees incurred in connection with the claim or suit in the underlying matter. For purposes of this Section, a Party shall be considered the prevailing party if the court of competent jurisdiction has reached a decision which is substantially closer to one Party's original claims or defenses, taken as a whole, than the opposing Party; provided that if the decision is not clearly substantially closer to one party's original claims or defenses,

11

taken as a whole, than the opposing Party, none of the Parties shall be entitled to collect attorney's fees.

[Doc. No. 64-8, p. 6].

The Court concludes that Suavinex is the prevailing party because the Court's decision in the underlying matter is substantially closer to Suavinex's claims and defenses. The Court granted Suavinex's Motion for Partial Summary Judgment to the extent that Suavinex asked the Court to find that it did not breach the 2012 Termination Agreement. Further, the Court found that LNC had breached the 2012 Termination Agreement's forum selection clause by filing a state court action.

Next, the Court considers and rejects LNC's contention that the 2012 Termination Agreement's reasonable attorneys' fees provision is inapplicable here because Suavinex's claims and defenses did not arise under the 2012 Termination Agreement, but under the 2009 agreement which did not contain an attorneys' fees provision. According to LNC, "[i]t is beyond dispute that LNC's claim against Suavinex asserted breach of obligations that were created by the 2009 Agreement." [Doc. No. 148].

This argument contorts the 2012 Termination Agreement's express language. The 2012 Termination Agreement awards attorneys' fees to a prevailing party whose claims or defenses–not the obligations underlying those claims or defenses– arise under the agreement. The 2009 Agreement may have originally created the obligations that Suavinex allegedly violated, but LNC's breach of contract *claim* did not arise under the 2009 agreement. The 2012 Termination Agreement created LNC's cause of action in this case, logically, because the 2009 Agreement no longer existed at the time it filed suit. In short, LNC's claims arose under the 2012 Termination Agreement.

The Court now turns to Suavinex's request for reasonable attorneys' fees under the 2012 Termination Agreement. The 2012 Termination Agreement's express language dictates that Louisiana

law governs the Court's award of attorneys' fees in this case.

Under Louisiana law, a "reasonable attorney's fee is determined by the facts of an individual case. In making awards for attorney's fees, the trial court is vested with great discretion..." *Richardson v. Parish of Jefferson*, 98-625 (La. App. 5 Cir. 1999); 727 So.2d 705, 707 (citations omitted). "The fundamental measure of attorney's fees is reasonableness, considering the factors set forth by Rules of Professional Conduct R. 1.5 [now Rule 1.5(a)]." *Mayeur v. Campbell*, 94-2263 (La. App. 1 Cir. 1995); 666 So.2d 366, 370.

Louisiana courts take the following factors into consideration when examining the reasonableness of attorneys' fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Silver Dream, LLC v. 3MC, Inc.*, 10-3658, 2011 WL 5878142, at *2 (E.D. La. Sept. 8, 2011).

These factors are essentially the same as those the Fifth Circuit articulated in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)*, to help courts analyze whether a fee award is reasonable. "Because the fundamental requirement of reasonableness and the factors used under Louisiana law are substantially similar to the federal lodestar method," the Court uses the federal lodestar analysis to determine the reasonable amount of attorney's fees. *See Silver Dream, LLC*, 10-3658, 2011 WL 5878142 at *3 (utilizing federal lodestar method to determine reasonable fee award under Louisiana law).

Under the federal approach, there are two steps to arriving at a reasonable attorney's fee. First,

the Court determines the lodestar amount by multiplying the number of hours reasonably expended by an appropriate rate in the community for such work. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir. 1993). Next, the court considers whether to raise or lower the lodestar. This undertaking requires the court to consider the *Johnson* factors to assure the fee's reasonableness. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

488 F.2d at 718.

### 1. *Calculating a Reasonable Hourly Rate*

Attorneys' fees must be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Johnson v. City of Monroe*, 06-0635, 2007 WL 4680476 at *2 (W.D. La. Nov. 27, 2007). The relevant legal market is the community where the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking attorneys' fees bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *Wells v. Regency Hosp. Co.*, 07-3775, 2008 WL 5273712 at *2 (E.D. La. Dec. 15, 2008) "A district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate." *Worldcom, Inc. v. Automated Communications, Inc.*, 75 F.Supp.2d 526, 531 (S.D. Miss. 1999). A United States District Court for the Middle District of Louisiana recently described the proof necessary to establish the prevailing market rate:

14

> "[A] mere conclusory statement that [a] fee [is] reasonable" is insufficient for calculating the lodestar fee. Rather, [t]o inform and assist the court in [determining the reasonable rate]" the fee applicant should produce an affidavit of the attorney performing the work, information of rates actually billed and paid in similar lawsuits, as well as "affidavits of other attorneys practicing [in the community in question] (the party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the community").

*Heck v. Buhler*, 07-00021, 2014 WL 2003270, at *2 (M.D. La. May 15, 2014) (citations omitted).

Here, Suavinex seeks attorneys' fees for seven attorneys and one paralegal from two different law firms. Four attorneys and one paralegal are from Banner & Witcoff ("Washington counsel"), a Washington D.C. law firm specializing in intellectual property disputes:

1.     Mr. Altherr ("Altherr") who charged $615 per hour;

2.     Mr. Roth ("Roth") who charged $405 and $415 per hour;

3.     Mr. College ("College")who charged $245 per hour;

4.     Ms. Sauer ("Sauer") who charged $240 and $245 per hour; and

5.     Mr. Goldie ("Goldie") (a paralegal) who charged $130 per hour.

Three attorneys are from Hudson, Potts & Bernstein ("Monroe counsel"), a Monroe law firm:

1.     Mr. Baldwin ("Baldwin") who charged $250 per hour;

2.     Mr. Huckabay ("Huckabay") who charged $250 per hour; and

3.     Mr. Cossey ("Cossey") who charged $200 per hour.

LNC first argues that these hourly rates lack evidentiary support and exceed those commanded in Monroe, Louisiana. In support of the reasonableness of the rates, Suavinex relies on Altherr's testimony that "[t]he billing rates provided for counsel from Banner & Witcoff, Ltd. are within the reasonable rates for Intellectual Property attorneys with comparable experience located in the Washington D.C. area." [Doc. No. 131, pg. 8]. Suavinex also cites the American Intellectual Property

Law Association 2015 Report of the Economic Survey which shows that the average hourly billing rate of a Washington D.C. partner with intellectual property expertise ranges from $534-$824 per hour. Finally, Suavinex points the Court to *Dugas v. Mercedes-Benz USA, LLC*, 12-02885, 2015 WL 1198604 (W.D. La. Mar. 16, 2015),  a case that the United States District Court for the Western District of Louisiana, Lafayette Division, decided just a few months ago, holding that $275 per hour was a reasonable rate in this district. In order to fully address these arguments, the Court must determine the relevant "community" for purposes of this suit.

Usually, the relevant community is defined as the district in which the forum court sits. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F.Supp.2d 732, 754 (S.D. Tex. 2008). However, under certain limited circumstances, out-of-district counsel may be entitled to the rates charged in their home districts. *See McClain v. Lufkin Indus. Inc.*, 649 F.3d 374 (5th Cir. 2011).  In *McClain*, the Fifth Circuit held that where "abundant and uncontradicted evidence prove[s] the necessity of turning to out-of-district counsel, the co-counsel's 'home rates' should be considered as a starting point for calculating the lodestar amount." *Id.* at 382. The court went on to find that out-of-district counsel was necessary where the record was flooded with "affidavits from a variety of expert employment lawyers who swore that no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." *Id.* at 383.

Suavinex claims it was reasonable to hire out-of-district counsel because this case involved complex intellectual property issues, and Monroe, Louisiana, is devoid of intellectual property attorneys. To bolster this assertion, Suavinex notes that there are no attorneys in Monroe, Louisiana, with eligibility to practice in front of the patent bar.

Assuming *arguendo* that it was reasonable to hire an intellectual property attorney, Suavinex

fails to explain that it was necessary  *See Davis v. Perry*, 991 F.Supp.2d 809, 843 (W.D. Tex. 2014) ("Although it might have been reasonable for Plaintiffs to hire D.C. counsel, Plaintiffs have failed to prove that it was necessary, as *McClain* requires"). Even if it was necessary, Suavinex only shows a lack of intellectual property attorneys in Monroe, Louisiana, not the entire Western District of Louisiana as *McClain* requires. Indeed, the United States Patent and Trademark office website that Suavinex cites lists a number of eligible attorneys in Shreveport and Lafayette, Louisiana. Finally, the Court notes that this case was a breach of contract case, not an intellectual property case, further belying Suavinex's attempt to use its Washington counsels' rate as the reasonable rate for the lodestar analysis. Therefore, all rates in this matter will be judged according to the prevailing market rate in Northern Louisiana. *See Johnson*, 06-0635, 2007 WL 4680476 at *2 (holding that the relevant legal community for purposes of attorneys' fees computation in case before the United States District Court for the Western District of Louisiana, Monroe Division, was Northern Louisiana).

However, the Court rejects LNC's argument that the Court should not award attorneys' fees as a matter of law because Suavinex has not produced testimony from disinterested, practicing attorneys in this community showing the prevailing market rate for attorneys' fees. While LNC cites to some cases from this Circuit that disallowed attorneys' fees under such circumstances, there are also cases in which the court looked to other evidence to determine a reasonable rate. *See e.g. Latioulais v. Griffith*, 09-0018, 2015 WL 4253976, at *4 (W.D. La. July 13, 2015) (finding prevailing party's failure to submit competent evidence of prevailing rate in the community did not foreclose award of attorneys' fees; instead, court looked to other cases to gauge rate's reasonableness).

In the alternative, LNC argues that the Court should set the rate for Suavinex's attorneys' fees between $150-$200. LNC offers a copious amount of evidence that shows this is the prevailing market

rate for attorneys' fees in the Monroe area.[2]

The Court will adopt LNC's proposed rates of $150 an hour for associates and $200 for partners. These rates are supported with ample evidence and are more reflective of the prevailing rates in Northern Louisiana  than the $275 rate used in the Lafayette case. Finally, the Court likewise reduces the Banner & Witcoff  paralegal's rate to $65 per hour.

### 2.      *Hours Reasonably Expended*

The lodestar formula's second component is designed to unveil the number of hours the fee-seeking party reasonably expended on the litigation. The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended. The fee-seeking party must also show it exercised "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented. *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990).

Here, LNC argues that a litany of issues plague Suavinex's invoices, both from its Washington D.C. counsel and Monroe counsel. The Court agrees. Suavinex's invoices suffer from the following shortcomings:

_____

[2]Specifically, LNC submits affidavits from multiple attorneys in the Monroe, Louisiana area tending to show the prevailing rate in the area: (1) Larry Arbour, an attorney with 39 years of experience in civil work such as insurance defense, charges $175 an hour [Doc. No. 148, Exh. A, Affidavit of Larry Arbour]; (2) Michael L. Dubos, a partner in a  Monroe law firm, charges $200 an hour for complex cases [Doc. No. 148, Exh. B, Affidavit of Michael Dubos]; (3) George Snellings, an attorney with 21 years of experience in a variety of legal work, charges between $150 to $200 an hour [Doc. No. 148, Exh. C, Affidavit of George Snellings]; (4) Donald Anzelmo, a litigation attorney with 39 years of experience, charges $150 per hour [Doc. No. 148, Exh. D, Affidavit of Donald Anzelmo]; and (5) Jon K. Guice, an attorney with 24 years of experience with a Monroe law firm who states that he has personal knowledge that the hourly rate for attorneys in non-complex litigation in Monroe averages between $150 to $200 an hour, and the average for paralegal work ranges from $45 to $75 an hour. [Doc. No. 148, Exh. E, Affidavit of Jon Guice].

### a.    *Duplicative, Unnecessary, and Excessive Entries*

First, LNC argues that many of the invoices contain duplicative and unnecessary entries. LNC notes that three separate attorneys billed time related to Suavinex's answer and counterclaim. Specifically, Altherr billed 17.3 hours, Roth billed 5.9 hours, and  Baldwin billed 2.3 hours. LNC also notes that two separate attorneys worked on Suavinex's Motion for Partial Summary Judgment. Mr. Roth billed more than one hundred seventy (170) hours and Mr. Altherr billed in excess of sixty hours. Although duplication of effort is not per se unreasonable, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker v. United States HUD*, 99 F.3d 761, 768 (5th Cir. 1996). To that end, Fifth Circuit courts often require some evidence that the fee-seeking party employed a division of labor with an eye towards reducing or eliminating duplicative billing. See *Davis*, 991 F.Supp.2d at 835.

In this case, three attorneys were not necessary to compose Suavinex's answer and counterclaim. Nor were two attorneys needed to construct Suavinex's Motion for Partial Summary Judgment; indeed, that motion was substantially similar to the motion Suavinex's counsel drafted in another state court suit filed in 2013. It should not take two attorneys more than two hundred hours to essentially copy a motion for partial summary judgment.

Finally, multiple Suavinex attorneys researched the same issues. For example, both Altherr and College researched preemption of state contract law by federal patent law. Similarly, both Althrerr and Sauer researched sufficiency of process on a foreign corporation. It was likely reasonable for more than one attorney to research the law. What is not reasonable, however, "is each and every attorney charging for each and every hour that each attorney spent, with no reduction for the duplication of effort at any turn." *Lalla v. City of New Orleans*, 161 F.Supp.2d 686, 706 (E.D. La. 2001). Suavinex's counsel billed

for duplicative entries, and the Court will reduce the total hours claimed.

### b.    *Clerical and Administrative Tasks*

LNC next argues that the Court should not consider hours devoted to clerical or administrative tasks in the reasonable hours determination. The following is a non-exhaustive list of clerical entries that LNC disputes: (1) completed deposition notices to LNC; (2) E-filed Case Management Order in the Western District of Louisiana; (3) add signature lines and serve on plaintiff's attorney; (4) convert motion to compel to PDF and email to Huckabay with exhibits. [Doc. No. 148 p. 21-22].

In an attempt to justify these time expenditures, Suavinex argues that they were performed by a paralegal. But, "paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). "Work that is legal in nature includes factual investigation, locating and interviewing witnesses, assisting in discovery, compiling statistical and financial data, checking legal citations, and drafting correspondence." *Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F.Supp.2d 568, 575 (E.D. La. 2008).

Converting documents to PDF format and adding signature lines to documents are clerical, not legal duties. Such entries also warrant a reduction to the number of compensable hours.

### c.    *Lack of Billing Judgment*

LNC also argues that Suavinex has not satisfied its burden of proving sound billing judgment. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizon v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). When a fee applicant fails to satisfy its burden of proving billing judgment, the Court should reduce the award by a percentage intended to substitute for the exercise of billing judgment. *Id.*

Suavinex has not submitted evidence that its attorneys exercised any degree of billing judgment

by writing off time as excessive or unproductive. Because of counsels' failure to exercise billing judgment, the Court will further reduce Suavinex's claimed hours.

### d.    *Block Billing and Vague Entries*

The Washington counsels' invoices consist of block billed entries, which are entries that lump together all of the daily time spent working on a case, rather than itemizing the time expended on specific tasks. *See Fralick v. Plumbers and Pipefitters Nat'l. Pension Fund*, 09-0752, 2011 WL 487754 at *4 (N.D. Tex. Feb. 11, 2011). Courts have noted that this practice can make it impossible to determine the reasonableness of the hours spent on each task. Many courts penalize the block billing party by reducing their claimed hours. *See id.* at 5. ("The court finds that Klancnik's practice of block billing has impeded its ability to determine the reasonableness of his request. Klancnik's billing statement contains no more than one entry per day, and it often groups several tasks under one entry."); *see also Johnson-Richardson v. Tangipahoa Parish. Sch. Bd.*, 12-0140, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013) (reducing hours by 30% because of block billing). The Court will further reduce Suavinex's claimed hours because the Washington counsels' use of block billing makes it difficult to gauge the reasonableness of their time expenditures.

Finally, LNC points out that many of the invoices contain vague entries. Courts have refused to compensate vague entries because it is impossible to test their reasonableness. "Litigants, 'take their chances' when submitting inadequately documented fee applications which provide little information from which to determine the reasonableness of the hours expended on tasks vaguely described or lumped together." *White v. Imperial Adjustment Corp.*, 99-3804, 2005 WL 1578810, at *16 (E.D. La. June 28, 2005).

For example, Suavinex seeks attorneys' fees for the following:

21

- Receive email from Hakim

- Review message from Bob Altherr

- Email to B. Altherr

- Phone call with plaintiff's attorney

- Phone call with Bob Altherr

This is a non-exhaustive list, but the Court finds the billing for vague tasks further supports a reduction of compensable hours.

### e.  Across the Board Cuts to the Hours "Reasonably" Expended

Suavinex's attorneys billed for nearly 1,900 hours in this case. In support of its motion for attorneys' fees, Suavinex submitted roughly 100 pages of invoices and time sheets. However, the evidence does not show all of these hours were reasonable.  Rather, the time sheets and invoices are replete with vague entries showing that Suavinex seeks attorneys' fees for duplicative and clerical tasks. Suavinex has also failed to exercise sound billing judgment, and its Washington D.C. counsel used block billing to document time expenditures–a practice many courts criticize.

For these reasons, a reduction in the number of hours Suavinex claims is warranted. Because sifting through the voluminous record to scrutinize nearly 1,900 hours of time entries is a waste of judicial resources, and because Suavinex's use of block billing makes it impossible to determine specifically which hours should be cut, the Court will apply across-the-board cuts to Suavinex's claimed hours. *See Richardson Indep. Sch.  Dist. v. Michael Z,* 561 F.Supp.2d 610, 626 (N.D. Tex. 2008) (approving across the board reduction in hours expended where fee-seeking party failed to exercise billing judgment and sought recovery for excessive, duplicative, and unspecified entries); *Hopwood v. State of Tex.,* 236 F.3d 256, 279 (5th Cir. 2000) (Fifth Circuit concluded that district court

22

did not abuse its discretion by ordering a flat, twenty-five percent reduction to attorney's hours when counsel exhibited poor billing judgment by performing hours of duplicative and unnecessary work, expending time on non-reimbursable items, and insufficiently detailing work performed on certain motions, because it was impractical for the court to wade through hundreds of time entries in order to assess a specific number of duplicative and excessive hours for each attorney.).

The court will reduce Suavinex's claimed hours by 25%. There is precedent for that number within this circuit when attorneys fail to exercise billing judgment; seek recompense for duplicative, unnecessary, and excessive tasks; and support their motion for attorneys' fees with vague time entries. *Id.* at 279.

After reducing the hourly rate to $150 for associate attorneys, $200 for partners, and $65 for paralegals, and further reducing Suavinex's claimed hours by 25%, the lodestar amount for each attorney and paralegal is as follows:

| Name (Position) | Hours Claimed | Hours Awarded | Proposed Billing Rate (per hour) | Court-imposed Billing Rate (per hour) | Awarded Fee |
|---|---|---|---|---|---|
| Robert F. Altherr, Jr. (Lead trial Counsel) | 672.4 | 504.3 | $615 | $200 | $100,860.00 |
| Christopher B. Roth (Partner) | 727.3 | 545.475 | $405 (through February 2015, after $415) | $200 | $109,095.00 |
| Adam College (Associate) | 126.7 | 95.025 | $245 | $150 | $14,253.75 |

| Camille Sauer (Associate) | 51.5 | 38.625 | $240 through February 2015, $245 after | $150 | $5,793.75 |
|---|---|---|---|---|---|
| Carlos Goldie (Paralegal) | 90 | 67.5 | $130 through February 2015, after $135 | $65 | $4,387.50 |
| Robert Baldwin (Partner) | 159.2 | 119.4 | $250 | $200 | $23,880.00 |
| Johnny Huckabay (Partner) | 32.6 | 24.45 | $250 | $200 | $4,890.00 |
| George Cassey (Partner) | 37.7 | 28.275 | $200 | $150 | $4,241.25 |

After applying these deductions, and after adjusting the attorneys' billing rates to more accurately reflect the prevailing community rates, the combined lodestar is $267,401.25.

### 3. Applying the Johnson Factors to the Lodestar

Generally, the lodestar formula yields a reasonable fee award; indeed, the lodestar amount is presumptively reasonable and courts should not alter it absent extraordinary circumstances. *See Coe v. Chesapeake Exploration, LLC*, 09-290, 2011 WL 4366728, at *6  (E.D. Tex. Sep. 15, 2011). The *Johnson* factors are designed to pinpoint those extraordinary circumstances, thus allowing the Court to further assure the reasonableness of the fee. "Four of the Johnson factors–the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained from the litigation–are presumably fully reflected in the lodestar amount." *In re*

*Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (citations omitted). The Court now analyzes the lodestar amount in light of the *Johnson* factors.

**a.     Time and labor involved**

Although one could question whether Suavinex needed two law firms to handle this litigation, reducing the Washington D.C. counsels' rates to those of its Monroe, Louisiana counterparts alleviates any concern. This factor does not warrant an adjustment to the lodestar.

**b.     Novelty and difficulty of the questions**

The lodestar amount adequately captures this factor.

**c.     The skill required to perform the legal services properly**

The lodestar amount adequately captures this factor.

**d.     Preclusion of other employment**

Suavinex offers no evidence showing that its attorneys were precluded from other employment because they worked on this case.

**e.     Customary fee**

The Court lowered the attorneys' rates in this case to better reflect the prevailing community rate. Therefore, this factor does not require an adjustment to the lodestar.

**f.     Fixed or contingent fee**

Suavinex was not operating under a fixed or contingent fee arrangement, and no adjustment is required.

**g.     Time limitations**

Suavinex introduces no evidence that its attorneys operated under any time restraints.

25

### h.    *The amount involved and the results obtained*

The lodestar amount normally encompasses this factor. The Court sees no reason to adjust the lodestar based on the results Suavinex obtained.

### i.    *The experience, reputation and ability of counsel*

The lodestar adequately compensates for this factor.

### j.    *The undesirability of the case*

It is unclear whether this case was undesirable or not; neither party introduces evidence on this point and it does not necessitate adjusting the lodestar.

### k.    *The nature and length of the professional relationship with the client*

Neither party introduces evidence on this point; The Court will not adjust the lodestar because of it.

### l.    *Awards in similar cases*

The Court has not found any cases with similar facts that would justify an adjustment to the lodestar.

This is not an exceptional case where the lodestar formula fails to provide a reasonable attorneys' fee. Therefore, the Court awards  Suavinex attorneys' fees in the amount of $267,401.25.

## III.    CONCLUSION

For these reasons, the Court declines to award Suavinex's attorneys' fees as actual damages for LNC's breach of the 2012 Termination Agreement's forum selection clause, but does award nominal damages in the amount of $500. Further, Suavinex's Motion for Attorneys' Fees and Costs [Doc. No. 131] is GRANTED IN PART and DENIED IN PART. To the extent it seeks an award of costs and expenses for stamping trial exhibits, deposition transcripts, and deposition exhibits, the motion is

GRANTED. To the extent the motion seeks a recovery of costs and expenses for "Blowback Printing" and related charges, deposition and exhibit translation, and video recording, the motion is DENIED.

IT IS FURTHER ORDERED that Suavinex submit evidence showing the costs of the deposition transcripts separate from the video-taped depositions so that a precise cost award may be determined.

Finally, Suavinex's Motion for Attorneys' Fees and Costs [Doc. No. 131] is GRANTED IN PART and DENIED IN PART. Suavinex is awarded $267,401.25 in attorneys' fees.

MONROE, LOUISIANA, this 28th  day of December, 2015.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE