# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 14-02491 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| GROUPO RIMAR, AKA SUAVINEX, SA | MAG. JUDGE KAREN L. HAYES |

## RULING

This is a breach of contract case. Plaintiff Luv n' Care, Ltd. ("LNC") filed suit against Groupo Rimar, Suavinex, SA ("Suavinex") over an alleged breach of the parties' 2012 Termination Agreement and Mutual Release ("2012 Termination Agreement"). Before the Court is Suavinex's "Motion for Partial Summary Judgment" [Doc. No. 177]. For the following reasons, Suavinex's Motion for Partial Summary Judgment is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

LNC is a Louisiana corporation; Suavinex is a Spanish corporation. [Doc. No. 20, p. 1]. Both companies sell and design baby products. In 2009 the parties entered into a distribution agreement whereby Suavinex would have the right to distribute certain products in mainland Spain and Spain's national territory. [Doc. No. 82-1, p. 3]. The products LNC authorized Suavinex to distribute included the orthodontic pacifier and soft top spout products at issue in this case. [Doc. No. 82-2, p. 11].

The 2009 Agreement had a term of three years. [Doc. No. 64, Exh. G, p. 8]. At some point before the agreement terminated, a dispute arose between the parties. In settlement of the dispute, the parties entered into a Termination Agreement on April 12, 2012. The 2012

Termination Agreement served to terminate the 2009 Agreement, subject to the survivability of Paragraphs 15, 16, and 19. [Doc. No. 64, Exh. H, p. 2]. Surviving Paragraphs 15, specifically 15B, and 19 of the 2009 Agreement are at issue in this case.

Paragraph 15B concerns "Intellectual Property Rights and LNC's Product Design and Packaging." In that provision, Suavinex agrees "**not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures and methods [and] any other proprietary designs or information without LNC's written permission.**" [Doc. No. 64, Exh. G, p. 8 (emphasis added)].

Paragraph 19 concerns "Use of Confidential Information" and provides:

> **During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, business plans, prototypes, procedures and methods [and] any other proprietary designs or information of the other party without the written consent of the other party. Either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. During the term of this Agreement and continuing after the expiration or termination hereof, Distributor agrees not to use in any fashion said information or designs, or any colorable imitations thereof...**

[Doc. No. 64, Exh. G, p. 10 (emphasis added)].

LNC asserts that, in 2013, it learned that Suavinex had been selling child and baby products that closely resembled its own, in violation of Paragraphs 15 and 19. [Doc. No. 20, p. 4]. On June 6, 2013, alleging Suavinex's sale of these products violated Paragraphs 15 and 19 of the 2009 Agreement, LNC filed a petition for breach of contract in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. ("Fourth Judicial District Court") [Doc. No. 64,

2

Exh. L]. However, that suit was voluntarily dismissed because the 2012 Termination Agreement mandated any suit related to its terms be brought in the United States District Court for the Western District of Louisiana.

On June 14, 2014, LNC filed a Complaint against Suavinex in this Court. [Doc. No. 1]. An Amended Complaint was filed on December 8, 2014. [Doc. No. 20]. The Amended Complaint alleged that certain Suavinex products so closely resembled the silicone soft top spout products and orthodontic pacifier as to violate the terms of paragraphs 15 and 19 of the 2009 Distribution Agreement. Id. at 4. Suavinex filed an Answer denying a breach of the 2009 Agreement or 2012 Termination Agreement. [Doc. No. 26]. In its Answer, Suavinex brought a Counterclaim for Breach of Contract, alleging LNC had violated the terms of the 2012 Termination Agreement by initially bringing suit in the Fourth Judicial District Court, and a Counterclaim for a Declaratory Judgment that it had not breached the terms of the 2009 Agreement or 2012 Termination Agreement. [Doc. No. 26, p. 14-15].

Suavinex filed a Motion for Partial Summary Judgment on July 6, 2015, seeking summary judgment on the following: (1) Suavinex's Counterclaim for Declaratory Judgment that Suavinex did not breach the parties' 2009 Agreement or 2012 Termination Agreement and Mutual Release, as alleged in LNC's Amended Complaint; (2) that LNC had not been irreparably harmed and therefore was not entitled to a permanent injunction prohibiting Suavinex's sales outside of the United States of the orthodontic pacifier and silicone soft top spout products at issue in this action; and (3) Suavinex's Counterclaim for Breach of Contract that LNC breached the 2012 Termination Agreement by willfully filing a breach of contract action in state court, knowing that the 2012 Termination Agreement mandated such action be brought only in the

3

United States District Court for the Western District of Louisiana. [Doc. No. 64, p. 1]. LNC opposed the Motion for Partial Summary Judgment.

In an opinion dated September 30, 2015, Judge Robert G. James granted Suavinex's partial summary judgment motion in its entirety, finding that there was no breach because the 2012 Termination Agreement did not apply to product designs that were already in the public domain, such as the two products at issue, and, therefore, LNC was not entitled to a permanent injunction. In a subsequent order, Judge James awarded Suavinex attorney's fees of $267,401.25 as the prevailing party, pursuant to the terms of the 2012 Termination Agreement.

LNC appealed the decision of this Court to the United States Court of Appeals, Fifth Circuit. [1]

On December 16, 2016, the Fifth Circuit reversed Judge James's decision. *Luv n' Care, Ltd. v. Groupo Rimar, aka Suavinex, S.A.,* 844 F.3d 442 (5th Cir. 2016) (Doc. No. 166). The Fifth Circuit stated that the judge **"erred by ignoring the plain meaning of the contract and imposing an extra-contractual requirement that LNC's product-related information already be protected by some other legal right in order to receive protection under the contract."** 844 F.3d at 447. The Fifth Circuit stated that it was making "no observation as to whether there is a meaningful difference between copying features of a 'product design' and copying a 'product design' for purposes of determining breach of the Termination Agreement. On remand, Suavinex may address this argument directly to the district court." 844 F.3d at 451.

The Fifth Circuit also stated:

---

[1] Judge James also ruled that LNC breached the 2012 Termination Agreement's forum selection clause by originally filing this action in state court and awarded nominal damages. LNC did not appeal that ruling.

4

> Further, we draw no conclusion as to whether Suavinex did, in fact, copy
> LNC's product designs, in violation of the Termination Agreement. These
> are questions of fact requiring an examination of the summary judgment
> record that the district court did not undertake. We remand to the district
> court to determine, in the first instance, whether these factual issues can be
> resolved on summary judgment.
>
> C. Injunctive Relief
>
> The district court's judgment that LNC was not entitled to an injunction
> was premised entirely on its conclusion that the Termination Agreement
> did not reach the products at issue, and therefore that Suavinex did not
> breach the agreement. Accordingly, reversing the district court's judgment
> on LNC's breach of contract claim requires that we reverse the district
> court's denial of injunctive relief as well. We take no position on the
> merits of whether LNC is entitled under Louisiana state law to the
> injunctive relief it seeks.
>
> D. Attorney's Fees
>
> Reversal on the breach of contract claim likewise requires vacation of
> the attorney's fees award to Sauvinex. It is premature at this juncture
> to conclude which party will be the 'prevailing party,' entitled to
> reasonable attorney's fees under Paragraph 5.9 of the Termination
> Agreement.
>
> III. Conclusion
>
> In sum, we REVERSE the district court's judgment on LNC's breach
> of contract claim and its request for injunctive relief. We VACATE
> the award of attorney's fees to Suavinex. And we REMAND the case
> to the district court for further proceedings consistent with this opinion.

844 F.3d at 451.

Suavinex filed a second Motion for Partial Summary Judgment on July 6, 2017, seeking summary judgment on the following: (1) Suavinex's Counterclaim for Declaratory Judgment that Suavinex did not breach the parties' 2009 Agreement or 2012 Termination Agreement, as alleged in LNC's Amended Complaint; and (2) LNC has not been irreparably harmed, and therefore, is not entitled to a world-wide permanent injunction prohibiting Suavinex's sales of the orthodontic

pacifier and silicone soft top spout products accused in this action. [Doc. No. 177, p.1]. On July 28, 2017, LNC filed an opposition memorandum. [Doc. No. 183]. On August 11, 2017, Suavinex filed a reply. [Doc. No. 184].

## II. LAW AND ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Thus, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986)).

With respect to LNC's claims that Suavinex breached the parties' Agreements and LNC's request for a permanent injunction, LNC bears the burden of proof. Accordingly, Suavinex need not negate all the essential elements of LNC's claim. Suavinex's burden is to demonstrate an absence of factual support for one or more of those elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323.

    2.    Interpretation of Contracts

To prove a breach of contract under Louisiana law, a party must show that: (1) the obligor had an obligation to perform; (2) the obligor failed to perform; and (3) the obligee sustained injury as a result of the obligor's failure to perform. *Favrot v. Favrot*, No. 1108-09 (La. App. 4 Cir. 2011), 68 So. 3d 1099, 1109. Interpretation of the contract will often be necessary to determine whether there has been a breach.

The goal of contract interpretation is to discover the common intent of the parties. LA. CIV. CODE ART. 2045. The contract language is the starting point for determining that common intent. *Six Flags, Inc., v. Westchester Surplus Lines Ins. Co.,* 565 F.3d 948, 954 (5th Cir. 2009). "The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE ART. 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. LA. CIV. CODE ART. 2048. Extrinsic evidence is proper only where a contract is ambiguous after

examination of the four corners of the agreement. *Amoco Production Co., v. Fina Oil & Chemical Co.,* No. 95-1185 (La. App. 1 Cir. 2/23/1996); 670 So.2d 502, 511.

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Caddo Gas Gathering, L.L.C. v. Regency Intrastate LLC*, 44-851 (La. App. 2 Cir. 11/12/2009); 26 So.3d 233, 235. However, if a court determines as a matter of law that a contract is ambiguous, then discerning the parties' intent becomes, in part, a question of fact, and summary judgment will rarely be appropriate. See *Carter v. BRMAP*, 90-1153 (La. App. 1 Cir. 11/22/1991); 591 So.2d 1184, 1188.

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. A contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage. *Hawthorne Land Co., v. Equilon Pipeline Co., LLC,* 309 F.3d 888, 893 (5th Cir. 2002).

### B. LNC's Breach of Contract Claim

Suavinex contends there are no disputed issues of material fact that: (1) Suavinex's accused products do not even "look like" the allegedly copied LNC products; (2) Suavinex never received any product design information from LNC during the term of the 2009 Agreement, much less copy or use any LNC product design information; and (3) the Suavinex products accused in this action were designed and commercially available prior to execution of the 2012 Agreement and as such all claims against the design of those products existing at that time or arising in the future were forever waived and released by LNC pursuant to the 2012 Agreement.

Suavinex also contends that ripe for summary judgment are (1) whether LNC's proposed interpretation of the parties' 2009 and 2012 Agreements converts those agreements into an

8

unenforceable, non-compete agreements unlimited in time and geographic area; and (2) whether LNC is entitled to a world-wide permanent injunction prohibiting sales of the accused products.

Suavinex further contends that it was not prohibited from developing its own products, even if those products may have some functions or features that may be similar to some functions or features of an LNC product or a third party commercial product that was publicly available and sold prior to the parties' 2009 Agreement.

Suavinex argues that "product design" and "colorable imitation" should be given "their commonly understood meanings that are directed to the whole product, mot merely a 'Feature' or 'Function' of the product." [Doc. No. 177-2, p. 17]

Suavinex presents in its memoranda many pictures comparing the LNC products with the Suavinex products and argues there are a number of readily apparent, significant differences, e.g., presence of handles, cup shape, contour, texture, etc. Suavinex also argues that LNC's breach of contract claim as to the pacifier is based on the alleged "soft outer rim" and the "hard/soft shield" feature of the LNC pacifier shield, which are directed to the idea of an "overmolded"pacifier shield, and that "overmolding" is not a process developed by LNC, but instead is a long used process and a common feature in many commercial products, including pacifiers and particularly pacifier shields long before the 2009 Agreement. In regard to LNC's breach of contract claim as to the sippy cup, Suavinex contends that claim is based solely on some features and functions of the center portion of the sippy cup top, namely the use of "soft silicone spout/top with or without a valve working on any type of compression", and that the use of soft silicone as the material used in the portion of baby products intended for placement in the baby's mouth was well-known in the industry prior to the execution of the 2009 Agreement.

unenforceable, non-compete agreements unlimited in time and geographic area; and (2) whether LNC is entitled to a world-wide permanent injunction prohibiting sales of the accused products.

Suavinex further contends that it was not prohibited from developing its own products, even if those products may have some functions or features that may be similar to some functions or features of an LNC product or a third party commercial product that was publicly available and sold prior to the parties' 2009 Agreement.

Suavinex argues that "product design" and "colorable imitation" should be given "their commonly understood meanings that are directed to the whole product, mot merely a 'Feature' or 'Function' of the product." [Doc. No. 177-2, p. 17]

Suavinex presents in its memoranda many pictures comparing the LNC products with the Suavinex products and argues there are a number of readily apparent, significant differences, e.g., presence of handles, cup shape, contour, texture, etc. Suavinex also argues that LNC's breach of contract claim as to the pacifier is based on the alleged "soft outer rim" and the "hard/soft shield" feature of the LNC pacifier shield, which are directed to the idea of an "overmolded"pacifier shield, and that "overmolding" is not a process developed by LNC, but instead is a long used process and a common feature in many commercial products, including pacifiers and particularly pacifier shields long before the 2009 Agreement. In regard to LNC's breach of contract claim as to the sippy cup, Suavinex contends that claim is based solely on some features and functions of the center portion of the sippy cup top, namely the use of "soft silicone spout/top with or without a valve working on any type of compression", and that the use of soft silicone as the material used in the portion of baby products intended for placement in the baby's mouth was well-known in the industry prior to the execution of the 2009 Agreement.

Suavinex argues that LNC is not entitled to a world-wide permanent injunction prohibiting sales of the accused products.

LNC, on the other hand, contends that Suavinex's argument that it independently designed and created its products is an inherently factual question that is not properly resolved by summary judgment. LNC states that it was the first in the industry to develop a pacifier that combines soft silicone edges with a hard shield, which provides protection if the child falls or bumps into something, and that it also invented a soft top for sippy cups that incorporates a soft spout with a no-spill compression valve creating the same "soft" safety features as its combination hard/soft shield pacifier. LNC states that no company had ever sold combination hard/soft shield pacifiers or sippy cups with soft cup tops until they were created by LNC. LNC contends that Suavinex breached the Agreements by producing pacifiers and cups that copied and/or used the product design, methods, and/or information of LNC's combination hard/soft shield pacifier and soft cup top.

LNC argues that there are a number of inherently factual issues–such as whether Suavinex independently designed and created its products–that are not properly determined by summary judgment, and that a question as to any of the fifty-one (51) "material facts" submitted by Suavinex is sufficient to preclude summary judgment. LNC contends that many of the exhibits that purport to establish Suavinex's "material facts" are not authenticated and thus are not competent summary judgment evidence.

This Court does not believe summary judgment is appropriate in this case. Whether the Suavinex products so closely resembled the LNC products and/or whether Suavanex copied or used LNC's product designs are factually intensive questions which defeat summary judgment.

Simply looking at the photos/pictures provided by Suzvinex is not enough. There are factual determinations which it will be necessary for the trier of fact to make.

Therefore, Suzvinex's Motion for Partial Summary Judgment is DENIED.

### C. LNC's Request for Permanent Injunction

This Court has found that Suavinex is not entitled to summary judgment with respect to its Counterclaim for Declaratory Judgment that it did not breach the parties' 2012 Termination Agreement. Therefore, Suavinex's motion for summary judgment that LNC is not entitled to a permanent injunction is also DENIED.

### III. CONCLUSION

For the foregoing reasons, Suavinex's Motion for Partial Summary Judgment is DENIED.

MONROE, LOUISIANA, this 22nd day of March, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE