# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. | CIVIL ACTION NO. 14-2491 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| GROUPO RIMAR, AKA SUAVINEX | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM ORDER

Pending before the Court is Defendant Groupo Rimar aka Suavinex's ("Suavinex") Motion in Limine to Exclude the Expert Reports and Opinion Testimony of Edward Manzo and Robert John Anders [Doc. No. 197]. Plaintiff Luv N' Care, Ltd. ("LNC") opposes the motion. [Doc. No. 228].

This is a breach of contract suit between LNC and Suavinex based on the parties' 2012 Termination Agreement and Mutual Release ("2012 Termination Agreement"). The 2012 Termination Agreement prohibited either party from copying, utilizing, disclosing, or making accessible certain listed items, including products, product designs, trade secrets, formulae, patents, drawings, business plans, prototypes, packaging, procedures and methods, and any other proprietary designs or information, without the other party's consent. LNC's Amended Complaint alleged that Suavinex breached the 2012 Termination Agreement by selling products

that closely resembled its own. Thus, the issue to be presented to the jury is whether Suavinex copied LNC's proprietary products in violation of the 2012 Termination Agreement.

Suavinex's Motion in Limine requests exclusion of Mr. Manzo's reports and testimony on the basis that he is not qualified in the relevant art, that his report lacks reliable methodology, and that his report and opinion will not assist the trier of fact.

Suzvinex's Motion in Limine requests exclusions of Mr. Anders' reports and testimony on the basis that they lack reliability and will not assist the jury.

Suzvinex does not request exclusion of the reports and testimony of LNC's expert witness N. Edward Hakim, but, rather, objects further to the reports and testimony of both Mr. Manzo and Mr. Anders as being duplicative and cumulative to that of Mr. Hakim.

FED R. EVID. 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district

court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

**Mr. Edward Manzo**

Suavinex contends that Mr. Manzo is LNC's current outside legal counsel with no skill, experience, training, or education in the design, manufacture or commercialization of any product, that he is not an expert in the field of design, and that his opinion testimony is nothing more than additional legal argument by LNC's counsel disguised as expert opinion. Suavinex states that although Mr. Manzo may well be qualified in the field of "intellectual property law" this is not an intellectual property case, as LNC itself has repeatedly stressed.

Suavinex further contends that Mr. Manzo's opinion is merely a subjective opinion wholly lacking sufficiency in its reliability. His apparent methodology was merely to examine,

in a vacuum, a Suavinex product in tandem with the corresponding LNC product and note visually apparent similarities between the two, while willfully ignoring any *differences* in the appearances and compositions. Suavinex contends that Mr. Manzo's opinion also lacks reliability because he is LNC's intellectual property attorney, and while writing his Report in this case, he was also separately advocating on LNC's behalf in this and in other matters, billing LNC several hundred thousand dollars, at a rate of over six-hundred dollars per hour. Suavinex also points to one occasion during Mr. Manzo's deposition where LNC asserted attorney-client privilege.

Suavenix argues that Mr. Manzo's opinion and report will not assist the trier of fact, in part because much of his report is directed to identification of features between products that are not the basis of any allegations in this matter or that cannot form the basis for any determination as to whether there has been a breach of the 2009 or 2012 agreement.

LNC responds that all of Suavinex's alleged infirmities in Mr. Manzo's qualifications and methodology properly go to the weight and credibility the jury will give his opinion and not to his admissibility as an LNC expert witness. LNC argues that the courts have taken a liberal approach towards qualification as an expert and that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert. LNC further argues that Mr. Manzo has practical experience of almost forty years as a registered patent attorney with the U.S. Patent and Trademark Office and that admission to that bar required him to study how to determine what is inventive and what is the same as the prior art, and to learn the U.S. Patent statute and the rules and regulations.

LNC contends that, although Mr. Manzo is not an industrial designer like Mr. Visser is, he is just as qualified to make visual comparison of products, as his entire professional career has

4

encompassed looking at products from the perspective of seeking patent protection, advising on infringement and invalidity issues, and providing advice on designing around the coverage of existing patents. LNC argues that Mr. Manzo's personal experience allows him to testify in this action involving the comparison of products—something he has done his entire professional life.

While Mr. Manzo was not asked to compare or identify *differences,* LNC points out that Suavinex's expert, Mr. Visser, was not asked to compare *similarities,* and that whether Mr. Manzo was required to assess the *differences* of the accused products and whether Mr. Visser was required to assess the *similarities* of the accused products is an issue for cross-examination at trial. LNC concludes that Suavinex's challenges are more appropriate subjects for "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

The Court finds that Mr. Edward Manzo is qualified to testify as an expert and that his opinions and methodology are sufficiently relevant and reliable. The Court agrees with LNC that Suavinex's challenges are more appropriate subjects for "vigorous cross-examination." However, Mr. Manzo's role both as counsel for LNC and as a witness is problematical, especially in view of the incident alluded to by Suavinex where LNC allegedly attempted to invoke the attorney-client privilege during Mr. Manzo's deposition. [Doc. No. 197-1, p. 11-12]. Accordingly, Suavinex's Motion in Limine with regard to the report and testimony of Mr. Edward Manzo is DENIED; however, by his testifying at trial, LNC and Mr. Manzo will likely waive any attorney-client privilege with respect to the issues in this case.

**Mr. Robert John Anders**

Suavinex contends that Mr. Anders' opinions and reports lack reliability and will not assist the jury. Suavinex contends that Mr. Anders offers nothing but unreasoned conclusions by

5

simply jumping from images of the two products (wherein he arbitrarily chooses certain features of the product to be the dominant design feature, the subdominant design feature and the subordinate design feature) to his final conclusion of copying, with no intermediary reasoning or explanation.

Suavinex further contends that Mr. Anders confirmed the speculative nature of his opinions and the unreliability of the methodology he used when he admitted that he used his own definition of "product design" rather than a definition accepted or even considered by others in the industry. Mr. Anders also admitted that he arbitrarily assigns certain design features as dominant, subdominant, or subordinate without relying on any objective basis; rather, the assignment is based on only the whim of the alleged expert.

Suavinex argues that Mr. Anders' methodology and resultant opinions are exactly the type that should be excluded under *Daubert* and its progeny—i.e., opinions based solely on his own say so and which cannot be replicated. Suavinex states that Mr. Anders blindly accepted information furnished to him by LNC, when he should have undertaken some independent investigation to justify the assumptions made. He failed to do any investigation, independent or not, and blindly accepted LNC's faulty contention that the LNC pacifier was the only commercial product having the design elements that form the basis of LNC allegations and that what was in other commercial products and documents was irrelevant to the issue of copying. Suavinex says that failure to independently investigate any of the facts shows a lack of reliability.

LNC responds that Mr. Anders devoted over 60 years spanning his entire adult life, devoted to the study, practice and teaching of industrial design. Mr. Anders has testified as an expert in industrial design in more than 40 cases. Mr. Anders has real-world, on-hands

6

experience, while also being a tenured Professor of Industrial Design at Pratt Institute.  Mr. Anders has published extensively in the field of Industrial Design.

LNC contends that Suavinex's expert, Mr. Visser, testified that he is not aware of any common, universally accepted definition of "product design" for an industrial designer.  Mr. Anders' definitions of "product design" and "colorable imitations" are his definitions based on his study, experience, and knowledge of the industrial design field, arise out of his publications and work on the related topic regarding the design process.  He is confident that his definition would be the meaning understood by a skilled industrial designer.

LNC denies that Mr. Anders arbitrarily chose certain features of the products to be dominant, subdominant and subordinate.  Mr. Anders has consistently applied, in his expert report and deposition testimony, a logical methodology to reach an opinion and that his opinion is based on his application of a modified methodology he believed to be appropriate in this case.

The Court finds that Mr. Robert John Anders is qualified to testify as an expert, and that his methods and opinions are sufficiently relevant and reliable.   Suavinex's complaints are precisely the type of issues that it can address in cross-examination of Mr. Anders.  Suavinex's Motion in Limine in regard to the reports and testimony of Mr. Robert John Anders is DENIED.

Accordingly, for the foregoing reasons, Suavinex'a Motion in Limine [Doc. No. 197] is DENIED.

MONROE, LOUISIANA, this 6th day of April, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE